UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  August 20, 2015
```

PERLEY J. THIBODEAU,

                Petitioner,

    v.

COMMISSIONER OF SOCIAL SECURITY,

              Respondent.

**ORDER**

10 Civ. 6360 (PGG) (KNF)

PAUL G. GARDEPHE, U.S.D.J.:

On June 15, 2002, pro se Petitioner Perley Thibodeau filed an application with the Social Security Administration ("SSA") for retirement benefits. See Administrative Record ("A.R.") 11. The SSA determined that Petitioner was not eligible for benefits because he had earned only 39 out of the 40 quarters of coverage that are required to have fully insured status and receive Social Security retirement income benefits. (Id.) Pending before the Court is the Commissioner of Social Security's motion for judgment on the pleadings. (Dkt. No. 11) In the report and recommendation ("R & R") (Dkt. No. 16), Magistrate Judge Fox recommends that the Commissioner's motion be granted. For the reasons stated below, this Court adopts the R & R and the Commissioner's motion for judgment on the pleadings will be granted.

## BACKGROUND

### I.   PROCEDURAL HISTORY

On February 21, 2006, Petitioner filed a lawsuit in the Southern District of New York challenging the SSA's decision. (Thibodeau v. Commissioner of Social Security, No. 06 Civ. 1344 (Dkt. No. 2)) On September 26, 2006, the Commissioner moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Id. (Dkt. No. 9)) The Honorable Denise L. Cote

granted the Commissioner's motion on March 23, 2007. <u>Thibodeau v. Barnhart</u>, No. 06 Civ. 1344 (DLC), 2007 WL 895687 (S.D.N.Y. Mar. 23, 2007). Petitioner moved for reconsideration (<u>Thibodeau v. Commissioner of Social Security</u>, No. 06 Civ. 1344 (Dkt. No. 18)), but his motion was denied. <u>Thibodeau v. Comm'r of Soc. Sec.</u>, No. 06 Civ. 1344 (DLC), 2007 WL 2077114 (S.D.N.Y. July 17, 2007). He then appealed to the Second Circuit. (<u>Thibodeau v. Commissioner of Social Security</u>, No. 06 Civ. 1344 (Dkt. No. 23))

On July 31, 2009, the Second Circuit issued a summary order vacating the district court's judgment and remanding the case. <u>Thibodeau v. Comm'r of Soc. Sec.</u>, 339 F. App'x. 62 (2d Cir. 2009). In doing so, the court noted that, "'[b]efore determining whether the Commissioner's conclusions are supported by substantial evidence, . . . we must first be satisfied that the claimant has had a full hearing under the regulations and in accordance with the beneficent purposes of the Social Security Act.'" <u>Id.</u> at 63 (quoting <u>Moran v. Astrue</u>, 569 F.3d 108, 112 (2d Cir. 2009)) (citing <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 508 (2d Cir. 2009)). The court concluded that this standard had not been met:

> The limited inquiry by the Administrative Law Judge ("ALJ") into the facts and circumstances of Thibodeau's case is virtually indistinguishable from the inquiry we criticized in <u>Moran</u> [v. Astrue, 569 F.3d 108 (2d Cir. 2009)], where we instructed the district court to vacate and remand an ALJ's denial of an application for Social Security disability benefits "not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision." <u>Moran</u>, 569 F.3d at 114-15. Similarly here, the scant administrative record – the hearing transcript spans fourteen pages – was left undeveloped in two significant ways.
>
> First, in analyzing Thibodeau's credibility the ALJ noted that Thibodeau lacked documentation reflecting any customers or services rendered during the time in question. But the ALJ should have helped Thibodeau cure that omission. From the record before us, it appears that had he done so, the ALJ would have discovered that Thibodeau had calendars and notations documenting at least some client names for the relevant period. We may order the Commissioner to consider new evidence upon our review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), if there is a "reasonable possibility" that, had this evidence been sought

2

and considered, the ALJ would have reached a different determination. <u>See</u>
<u>Tirado v. Bowen</u>, 842 F.2d 595, 597 (2d Cir. 1988).  We conclude that
supplementation of the record in this case would create such a "reasonable
possibility."

Second, although the Social Security Administration has identified four factors to
be considered when determining the existence of a trade or business, the ALJ cut
short testimony relevant to those factors.  <u>See</u> Soc. Sec. Admin., Program
Operations Manual System Section RS 01802.002, <u>available</u> at
https://secure.ssa.gov/apps10/poms.nsf/lnx/0301802002 (last visited July 29,
2009) ("POMS"); <u>see also</u> <u>Bubnis v. Apfel</u>, 150 F.3d 177, 181 (2d Cir. 1998).
We think evidence of Thibodeau's health is relevant both to a proper evaluation
of the continuity and regularity of Thibodeau's hairdressing business and to
whether Thibodeau made a good-faith effort to make a profit or produce income
in the quarter in question.  <u>See</u> POMS.  But the ALJ diverted the inquiry from
such considerations.  As to the consideration of what steps Thibodeau took to
advertise his services or hold himself out as a hairdresser, <u>see</u> <u>id.</u>, we think the
ALJ's questioning to have been strikingly terse and negatively phrased, eliciting
brief responses rather than elaboration from Thibodeau.  Such an inquiry does not,
we think, meet an ALJ's "heightened" duty to protect a <u>pro se</u> claimant's rights by
"scrupulously and conscientiously probing into, inquiring of, and exploring for all
the relevant facts."  <u>Moran</u>, 569 F.3d at 113 (brackets and internal quotation
marks omitted).

<u>Id.</u> at 63-64.  After the Second Circuit's decision, the district court remanded this case to the

Commissioner of Social Security.  (<u>Thibodeau v. Commissioner of Social Security</u>, No. 06 Civ.

1344 (Dkt. No. 28))

On remand, Petitioner appeared and testified before the ALJ at a hearing

conducted on June 7, 2010.  <u>See</u> A.R. 111, 191.  On June 25, 2010, the ALJ again denied

Petitioner's claim for retirement benefits.  (<u>Id.</u> 108; <u>see also</u> Cmplt. (Dkt. No. 2) ¶ 7)[1]  The ALJ

found that Petitioner (1) had 39 of the 40 required quarters of coverage prior to May 2002; (2)

did not have a trade or business in 2002; (3) did not earn sufficient self-employment income to

---

[1] Unless otherwise indicated, all docket citations refer to <u>Thibodeau v. Commissioner of Social
Security</u>, No. 10 Civ. 6360.

qualify for a quarter of coverage in 2002[2]; and (4) had not achieved fully insured status.  (A.R. 114-16)

## II.    THE ADMINISTRATIVE LAW JUDGE'S DECISION ON REMAND

According to Petitioner, after 27 years of not working because of a disability, see, e.g., id. 90, 114, he decided to resume his former hairdressing profession.  (Id. 113)  Petitioner asserts that on May 20 and May 21, 2002, he "washed, cut and colored the hair" of eight female customers, charging each customer $150, or $1,200 in total.  (Id.)  Petitioner also alleges that he received full payment from each customer by June 4, 2002.  (Id.)

In February 2003, Petitioner filed his 2002 federal tax return, reporting gross receipts of $945 and $70 in expenses.  (Id.)  After accounting for the self-employment tax, Petitioner reported net earnings of $808 – $72 below the income threshold for a covered quarter determination.  (Id. (citing id. 75, 77))[3]  In November 2003, however, Petitioner filed an amended 2002 federal tax return reflecting gross receipts of $1,095, no expenses, and net earnings of $1,012.  (Id. 113 (citing id. 37, 58))  Relying on his amended tax return, Petitioner asserts that his 2002 earnings qualify him for the 40th quarter of coverage, entitling him to retirement benefits.  (Id. 113)  It is undisputed that Petitioner amassed 39 quarters of coverage based upon his earnings between 1954 and 1977.  (Id. 114 (citing id. 29)

In his decision denying Petitioner's claim for retirement benefits, the ALJ acknowledged the Second Circuit's instructions concerning his obligations on remand:

> [The Second Circuit's] order requires that the undersigned fully develop the record, to wit, consider the new evidence submitted by the claimant pursuant to

---

[2]  In order to be credited with a quarter of coverage in 2002, an individual had to have wages and self-employment income amounting to $870.  See Administrative Record ("A.R.") 113; 42 U.S.C. § 413.

[3]  In his decision, the ALJ cites to exhibits that are now part of the Administrative Record.

4

> 42 USC section 405(g), [el]icit testimony in consideration of whether the claimant had a valid trade or business, evaluate the claimant's health in relation to his ability to continue his hairdressing business and whether he made a good faith effort to make a profit or produce income in the quarter in question, and consider what steps the claimant took to advertise his services or hold himself out as being engaged in the selling of goods and services.

(A.R. 111)

The ALJ also set forth the four factors that must be considered in making a determination of whether Petitioner had a trade or business in 2002:

1.  Was the activity initiated and conducted in good faith with the intention of making a profit or producing income?
2.  Had the activity been regularly called on, i.e., was there a continuity of operations, a constant repetition of transactions, or a regularity of activities?
3.  Did the individual[] have a regular occupation or calling? The activity should be one that is being carried on for the purpose of livelihood or profit.
4.  Did the individual[ ] hold himself/herself out to others as being engaged in the selling or goods and/or services? (Program Operations Manual System (POMS) RS 01802.002)

(Id. 113; see Soc. Sec. Admin., Program Operations Manual System Section RS 01802.002, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0301802002 (last visited August 19, 2015)

The ALJ first addressed whether Petitioner held himself out as a hairdresser. (A.R. 114) The ALJ determined that Petitioner had advertised his services through word of mouth to an acquaintance named Bernadette, who subsequently helped Petitioner procure clients. (Id.) Accordingly, the ALJ found that Petitioner held himself out as being engaged in the services of hairdressing.

Next the ALJ considered whether Petitioner had engaged in work activity with the good faith intention of making a profit or producing income. (Id.) The ALJ noted that Petitioner had been informed by the SSA that he could qualify for a 40th quarter of coverage – and thus be

5

eligible for retirement benefits – if he earned $1,000 in 2002.  (Id. (citing id. 91))  Petitioner

informed the SSA that (1) he used all of his energy trying to work for two days in May 2002; (2)

his customers knew that he was trying to earn income in order to qualify for retirement benefits;

and (3) Petitioner destroyed his health as a result of working on May 20 and May 21, 2002.  (Id.

(citing id. 20-21, 91))  The ALJ found that Petitioner's work activity was "perhaps [conducted]

in good faith with the intention of making a profit or producing income."  (Id.)  However, as

discussed in greater detail below, the ALJ questioned the accuracy of the documentation of

Petitioner's earnings from his alleged work.  (Id.)

       The ALJ next analyzed whether Petitioner had established hairdressing as his

regular occupation.  (Id.)  The ALJ found that Petitioner graduated from cosmetology school in

September 1974 and became a licensed cosmetologist.  (Id. (citing id. 162, 184))  The ALJ

noted, however, that Petitioner had testified during a September 19, 2005 SSA hearing that –

prior to May 2002 – he had not worked as a hairdresser since 1975.  (Id. (citing id. 89))

Accordingly, Petitioner had not worked as a hairdresser in 27 years.  Moreover, in the mid-

1970's, when Petitioner worked as a hairdresser, his work was sporadic.  (Id. (citing id. 89))

Indeed, Petitioner reported in an April 22, 2004 SSA questionnaire that he had only worked for

two to three months in 1974.  (Id. (citing id. 184))[4]  Accordingly, the ALJ concluded that

Petitioner had not established hairdressing as his regular occupation or calling.  (Id.)

       With respect to the last factor – whether there was any regularity in Petitioner's

work activity as a hairdresser – the ALJ noted that in an August 4, 2004 letter to the SSA,

Petitioner asserted that he believed in 2002 that he would be able to work "a little more in the

---

[4]  Petitioner's tax returns reflect income of $386.28 in 1970; $639 in 1971; $133.20 in 1972; $0
in 1973; $730.87 in 1974; $399.82 in 1977; and $12.40 in 1980.  (A.R. 29)  The tax returns also
show that Petitioner earned no income in 1975, 1976, 1978, 1979, or in any year after 1980
through 2001.  (Id.)

future on a self employed basis." (Id. (citing id. 20-21))  Nonetheless, the ALJ concluded that the evidence showed that there was no regularity in Petitioner's work activity as a hairdresser.

In connection with these issues, the ALJ first noted that Petitioner last worked as a licensed hairdresser in 1974.  (Id.)  Moreover, in an April 22, 2004 SSA questionnaire, Petitioner stated that he had not renewed his cosmetologist license after 1974 because he was "unable to work." (Id. (citing id. 184))  In the same questionnaire, Petitioner stated that his May 2002 hairdressing was a "1 [t]ime [d]eal[.]" (Id. (citing id. 184))  During the 2005 SSA hearing, Petitioner testified that (1) he had not worked in more than twenty years; and (2) he was unable to work because of his disability.  (Id. 114-15 (citing id. 90))  Petitioner further testified that he was receiving SSI for depression and arthritis of the spine (id. 115 (citing id. 86-87)), that his depression and ability to function fluctuated on a daily basis, and that the work he performed was not done on a regular basis.  (Id. (citing id. 92))  The ALJ concluded that this level of impairment suggested that Petitioner was unable to perform basic work activity.  (Id.)

Although Petitioner submitted calendar pages from May and June of 2002 reflecting several activities Petitioner allegedly engaged in at the time – including hairdressing work on May 20 and 21, 2002 – the reliability of these records was significantly undermined by Petitioner's testimony that he had not necessarily engaged in all of the activities listed on the calendar.  (Id. (citing id. 159, 160)  The ALJ found that the calendar entries do not constitute reliable evidence as to whether Petitioner had actually worked on May 20 and 21, 2002, and went on to conclude that a trade or business did not exist in 2002 for purposes of establishing Petitioner's eligibility for retirement benefits.  (Id.)

With respect to the Second Circuit's instruction that the ALJ assist Petitioner in "supplement[ing] . . . the record" with documentation "reflecting any customers or services

rendered [by Petitioner] during the time period in question," Thibodeau, 339 F. App'x. at 63-64,

the ALJ received a fourteen-page submission from Petitioner at the June 7, 2010 hearing. (A.R.

1 ("List of Exhibits") at Exh. 12 ("Claimant's submission 6/7/10"); see id. 158-71) Petitioner's

submission includes: (1) a May 12, 2010 letter from Senator Kirsten Gillibrand to Petitioner (id.

158); (2) pages from Petitioner's calendar from May and June 2002 (id. 159-160); (3) a page of

notes prepared by Petitioner relating to the hairdressing work that he performed on May 20 and

May 21, 2002[5] (id. 161); (4) a copy of a timesheet that appears to reflect work that Petitioner

performed as a hairdresser in 1973[6] (id. 162); (5) a photocopy of five personal checks signed by

Petitioner in 2005[7] (id. 163); (6) the Second Circuit's July 31, 2009 summary order (id. 164-

167); (7) a May 4, 2010 letter from SSA Regional Communications Director John Shallman to

Senator Gillibrand that discusses Petitioner's scheduled SSA hearing date (id. 168); and (8) a

March 19, 2009 letter from Petitioner to the Second Circuit informing the court that Petitioner

was "physically unable to attend th[e] oral argument," and providing details as to Petitioner's

then current medical condition. (Id. 170-171) Petitioner's submission also includes an April 24,

2010 "To Whom It May Concern" letter from Petitioner. (Id. 169) The letter states that

Petitioner has enclosed several exhibits "that the [Second Circuit's] mandate refers to, as these

are all that I have left to submit to the administrative judge were I to meet with one. These

combined with all of the records that have been col[l]ected on me for the past eight years should,

---

[5] The notes are barely legible but appear to reflect the first names of seven alleged customers,
the amounts they paid, expenses associated with this work, and certain mathematical
calculations. (A.R. 161; see also id. 217)

[6] The timesheet includes Petitioner's name, as well as the months, hours, and total hours that
Petitioner allegedly worked in 1973.

[7] One of the 2005 checks – in the amount of $10.00 – is circled. (Id. 163) Although difficult to
read, the check appears to be made out to the cosmetology certification board. The remaining
checks appear to be entirely irrelevant.

I feel entitle me to the benefits for which I have laboriously worked for over the past fifty six (1954) years!"  (Id.)

       After considering Petitioner's testimony at the June 7, 2010 hearing and all of the documentation submitted in connection with Petitioner's claim, the ALJ concluded that Petitioner had not offered sufficient credible evidence to demonstrate that he earned enough income from his alleged May 20-21, 2002 hairdressing to qualify for a 40th quarter of coverage. (Id. 115)

       As an initial matter, the ALJ found that the evidence Petitioner offered of his work activity in 2002 was not credible or reliable.  As to the income Petitioner earned from his May 20-21, 2002 hairdressing, the ALJ noted that Petitioner had amended his 2002 federal tax return to show gross earnings of $1,095 and net earnings of $1,012.  (Id. (citing id. 37, 58)) Petitioner had produced no receipts or statements relating to any of his purported customers, however, and the documentation that he did provide called into question the actual income that he had allegedly earned.  For example, Petitioner testified at the 2005 and the 2010 SSA hearings that he performed hairdressing services for eight female customers.  See id. 91, 194.  However, the page of notes that Petitioner provided to the ALJ in 2010 includes only seven names.  (Id. 115 (citing id. 161)) Petitioner's testimony concerning payments made by a purported customer named "Evelyn" was also inconsistent.  At the 2005 SSA hearing, Petitioner testified that Evelyn had paid him $120.  (Id. (citing id. 94)) During the 2010 SSA hearing, however, Petitioner testified that Evelyn paid him $150.  (Id.; see id. 203) Accordingly, the ALJ found that "there is a discrepancy in the number of clients [Petitioner] actually had and the payment he received for his services."  (Id.)

The ALJ also rejected as not credible Petitioner's assertion that no business expenses were associated with the income he earned in 2002.  The page of notes that Petitioner provided to the ALJ during the June 2010 hearing includes the first names of seven alleged customers.  (Id.; see also id. 161)  The notes indicate that six of these alleged customers were charged $150 in May 2002; each of these individuals also paid an unexplained fee of $7.50. Accordingly, Petitioner's gross income from these six alleged customers was $945.  (Id.)  After subtracting $70 in expenses – a cost reflected both in the notes and in Petitioner's original 2002 federal income tax return – the net profit associated with these six customers was $875.  (Id.)

On his amended 2002 federal income tax return, however, Petitioner lists gross receipts of $1,095, no expenses, and net earnings of $1,012.  (Id. (citing id. 37, 58))  Petitioner testified that another customer paid him $150 "a couple of days later" (id. 198), bringing his gross receipts to $1,095.  (Id. 115)[8]  With respect to business expenses, Petitioner stated in his amended 2002 return that he was not claiming any expenses, because he could not find the relevant receipts.  (Id. (citing id. 34))  During the June 2010 hearing before the ALJ, however, Petitioner offered a different explanation:  he testified that he did not have any business expenses because – despite the fact that he had not worked as a hairdresser in 27 years – he already owned all of the necessary hairdressing supplies, including shampoo, hair coloring, and scissors.  (Id. 115; see also id. 210)  At the 2005 SSA hearing, however, Petitioner had testified that his expenses in 2002 were $50 to $60.  (Id. (citing id. 94))  The ALJ also noted that the page of notes that Petitioner provided at the June 2010 hearing reflect expenses of $70.  (Id. (citing id. 161)) Accordingly, the ALJ concluded that Petitioner's testimony that he had no business expenses was not credible.  Although Petitioner insisted that it was his "prerogative [whether] to deduct

---

[8]  The record does not reflect when Petitioner's eighth purported customer paid him.

10

expenses from his gross earnings[,]" the ALJ noted that – for purposes of Social Security – "business expenses must be deducted to determine countable income and entitlement to benefits." (Id. 115-6 (citing 20 C.F.R. § 404.1575, PMS DI 10510.012))

The ALJ also found that Petitioner's records concerning his hairdressing work were not reliable, and that Petitioner's testimony about these records was not credible. (Id. 116) In 2004, the SSA sent Petitioner a questionnaire regarding his Social Security benefits. See id. 184-85. The questionnaire asked Petitioner whether he "ha[d] any records, such as an appointment calendar, or a list of customers" from his work as a hairdresser in 2002. (Id. 184) Petitioner stated: "they were friends of a friend – no record kept. 1 Time Deal!" (Id.) At the June 2010 SSA hearing, however, Petitioner produced calendar pages and notes that allegedly set forth the names of seven of his purported customers and the amount of income that Petitioner allegedly earned. See id. 161. Moreover, as noted above, Petitioner conceded that he had not actually engaged in all of the activities reflected on his calendar. (Id. 116; see also id. 225-26) And while Petitioner claims to have performed hairdressing services for eight women, his notes reflect only seven names. (Id. 116; see also id. 161)

The ALJ also rejected as not credible Petitioner's assertion that he intended to continue working after May 2002. In this regard, the ALJ cited Petitioner's statement in the April 22, 2004 SSA questionnaire that his May 2002 work was a "1 [t]ime [d]eal[.]" (Id. 116 (citing id. 184)) The ALJ also found that Petitioner's claim to have performed hairdressing work on eight customers between 7:30 p.m. and 12:00 a.m. on two consecutive days – work that would have involved "standing and reaching and the ability to sustain concentration" – was inconsistent with the level of impairment alleged by Petitioner. (Id.) Petitioner had suffered two heart attacks and had previously claimed to SSA he was completely disabled.

11

Petitioner's behavior during the June 7, 2010 SSA hearing also undermined his credibility as a witness.  The ALJ reported that, "when questioned about the discrepancies in the evidence, the [Petitioner] became insulting, belligerent and uncooperative, refusing to answer the questions posed."  (Id.)  The ALJ noted that while Petitioner testified that he could not recall details of events that occurred eight years ago, he claimed that he could recall names, places, past conversations, and other details of events that occurred well over eight years ago.  (Id.)

In sum, the ALJ concluded that Petitioner's 2002 income could not be verified. (Id.)  While Petitioner insisted that the ALJ was required to accept as fact the income Petitioner had reported to the Internal Revenue Service in his amended 2002 federal income tax return, the ALJ noted that the SSA is not bound by what a claimant reports on his or her tax return.  (Id.) Under Social Security Ruling 86-4c, Petitioner is required to submit proper and complete evidence to substantiate his reported income, and such evidence is subject to verification.  (Id.; see Schipani v. Heckler, SSR-86-4c, 1984 WL 23253 (Nov. 2, 1984))  The ALJ determined that Petitioner had not demonstrated that he had sufficient self-employment income to earn a quarter of coverage in 2002, and was therefore not entitled to receive retirement benefits.  (Id. 116-17)

The ALJ's decision was affirmed in an August 13, 2010 letter by the Appeals Council.  (Id. 99)  Petitioner received this letter on August 18, 2010, rendering the ALJ's determination the "final decision" of the Commissioner.  (Cmplt. (Dkt. No. 2) ¶ 8)

## III.   DISTRICT COURT PROCEEDINGS

On August 25, 2010, Petitioner filed the instant Complaint pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended by 42 U.S.C. Sections 405(g) and 1383(c)(3).  (Id. ¶ 1)  Thibodeau challenges the final decision of the Commissioner of Social

Security denying his application for benefits.  On October 18, 2010, this Court referred the

matter to Magistrate Judge Fox for a report and recommendation.  (Dkt. No. 7)

On February 14, 2011, the Commissioner moved for judgment on the pleadings

pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 11)  Petitioner filed an affirmation in opposition on

March 1, 2011.  (Dkt. No. 13)  The Commissioner submitted a reply on March 28, 2011.  (Dkt.

No. 14)  In his opposition to the Commissioner's motion, Petitioner submitted "copies of [his]

2002 tax return, checks and calendar, which duplicate the evidence already in the record."  (R &

R (Dkt. No. 16) at 12-13)  Petitioner also included as new evidence "(a) photographs of what

appears to be an empty, undated package of 'Ogilvie Conditioning Home Permanent'; (b) fuzzy

photographs of what barely appears to be hairdressing supplies; (c) a 2007 online article on post-

operative depression; and (d) [Petitioner's] medical records from Beth Israel Medical Center,

dating from 2008 to 2010.  (Id. at 13)  Judge Fox refused to consider the new evidence, however,

because it was "not relevant or probative of the time period at issue, which is the period

immediately following May 21, 2002."  (Id.)  Judge Fox also noted that what is shown in the

photographs is barely discernible; that the photographs could have been taken at any time or

place; and that consequently the photographs likely would not have influenced the ALJ's

decision.  (Id. at 13-14)

A.     **The Magistrate Judge's Report and Recommendation**

On July 21, 2011, Judge Fox issued an R & R recommending that the

Commissioner's motion for judgment on the pleadings be granted.  (Dkt. No. 16)  Judge Fox

found that the

> ALJ complied with the directive of the Second Circuit's order by developing the
> record through documentary and testimonial evidence in order to:  (i) cure the
> problem occasioned by the lack of documentation reflecting any customers
> [Petitioner] had or the services he rendered during the time in question; and

(ii) analyze the four factors required to be considered when determining the existence of a trade or business.

(Id. at 14)

      In reviewing the ALJ's decision, Judge Fox found Petitioner's testimony not credible. Judge Fox noted, for example, that in the April 22, 2004 SSA questionnaire, Petitioner had reported that his May 2002 work was a "one time deal." (Id.) Moreover, during the September 19, 2005 SSA hearing, Petitioner testified that his customers knew that he was cutting their hair for the purpose of trying to qualify for retirement benefits. (Id.) In opposing the Commissioner's motion, Petitioner argued that the "one time deal" phrase was taken out of context, because he had undergone bypass heart surgery just three days earlier. (Id.; see also Pet. Br. (Dkt. No. 13) at 2) Judge Fox noted that this assertion was not credible, however, because Petitioner had testified on June 7, 2010 that his heart surgery occurred between May and November 2002, and he made the "one time deal" statement nearly two years later on April 22, 2004. (R & R (Dkt. No. 16) at 14) Judge Fox also found not credible Petitioner's testimony that he did not have any business expenses, because he had not worked as a hairdresser since 1974. (Id. at 15)

      Judge Fox also noted that Petitioner gave inconsistent testimony during the SSA hearings. For example, Petitioner testified during the 2005 SSA hearing that "Evelyn," one of his purported customer, paid him $120. During the 2010 SSA hearing, however, Petitioner testified that Evelyn had paid him $150. (Id.) Petitioner also testified inconsistently about whether Evelyn had paid him before or after he prepared his original 2002 tax return. (Id.) Judge Fox also acknowledged that Petitioner became insulting when the ALJ asked questions regarding the discrepancies in his testimony. (Id.)

Judge Fox likewise determined that the documentary evidence submitted by Petitioner was not reliable. For example, Petitioner testified repeatedly at the SSA hearings that he had performed hairdressing work for eight customers. (Id.) The page of notes that Petitioner submitted to the ALJ only listed seven customers, however. (Id.) In sum, Judge Fox found that the documentary evidence submitted by Petitioner was "not consistent with his testimony." (Id. at 14) Petitioner "was not able to explain the many discrepancies noted by the ALJ" despite having the opportunity to do so. (Id.)

Judge Fox also agreed with the ALJ that Petitioner had not demonstrated "continuity of operation, repetition of transactions, or regularity of activities." (Id. at 15) Petitioner did not perform hairdressing work from 1974 until May 20, 2002. (Id.) He then allegedly performed hairdressing work for two days and never worked again. (Id.) Moreover, in May 2002 Petitioner was not licensed to work as a hairdresser. (Id.) Although the ALJ acknowledged that there was evidence that Petitioner held himself out as a hairdresser, such evidence is not alone sufficient to establish a trade or business. (Id.) Judge Fox found that the ALJ's conclusion that Petitioner had no established trade or business is not contrary to law and is supported by substantial evidence. (Id. at 15)

Finally, Judge Fox concluded that, "[a]lthough . . . [Petitioner's] . . . 2002 amended tax return[ ] appear[s] to suggest that he satisfied the amount of self-employment income required to earn one quarter of coverage in 2002, $870, the conflicting evidence offered [by Petitioner] in support of the purported earnings and business expenses, and the unexplained discrepancies in the record support the ALJ's finding that [Petitioner] did not have self-employment income in an amount sufficient to earn any quarter of coverage in 2002." (Id. at 15-16)

In his July 21, 2011 R & R, Judge Fox informed the parties that they had fourteen days from service of the R & R to file any objections pursuant to 28 U.S.C. Section 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.[9] (Id. at 17)

On July 26, 2011, Petitioner filed a notice of appeal. See Dkt. Nos. 18, 19. On November 9, 2012, the Second Circuit granted the Commissioner's motion to dismiss for lack of appellate jurisdiction, because "the appeal improperly [sought] review of a magistrate judge's [report and recommendation]." (Second Circuit Mandate (Dkt. No. 21) (citing cases))  However, the Second Circuit directed this Court to "determine whether [Petitioner's] notice of appeal should be liberally construed as a timely objection to the magistrate judge's [R & R]." (Id.)

In a January 8, 2013 letter, the Government informed the Court that it "has no objection to [Petitioner's] notice of appeal being construed as an objection to the magistrate's [R & R]." (Dkt. No. 21)  Accordingly, on March 8, 2013, this Court issued an order stating that "Petitioner's notice of appeal will be construed as an objection to the Magistrate Judge's report and recommendation." (Dkt. No. 22)

In an August 16, 2013 letter, Petitioner informed the Court that the SSA had issued a decision granting Petitioner monthly retirement benefits beginning in July 2013. (Dkt. No. 23)  In a March 14, 2014 letter, the Commissioner reported that the "parties have conferred with regard to this case being dismissed in light of [Petitioner's] receipt of [retirement] benefits." (Dkt. No. 26)  In a March 28, 2014 letter, however, the Commissioner informed the Court that

---

[9] A "party generally waives judicial review of an issue when he or she fails to make timely objection to a magistrate judge's report, as long as all parties receive clear notice of the consequences of their failure to object." DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)); see also McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983) ("When a party fails to object timely to a magistrate's recommended decision, it waives any right to further judicial review of that decision.").

the SSA had determined that its grant of retirement benefits "was made in error" and that such payments would not continue. (Dkt. No. 27)  Accordingly, the parties were not able to reach an agreement resolving this case. See id.

## DISCUSSION

In evaluating a Magistrate Judge's R & R, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  When a timely objection has been made to the Magistrate Judge's recommendations, "[the district court judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.  "'[T]o the extent . . . that the [objecting] party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the [R & R] strictly for clear error.'" DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (quoting IndyMac Bank, FSB v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Oct. 31, 2008)).  Although "[t]he objections of parties appearing pro se are 'generally accorded leniency' and should be construed 'to raise the strongest arguments that they suggest[,]' Milano v. Astrue, No. Civ. 6527 (KMW), 2008 WL 4410131, at *24 (S.D.N.Y. Sept. 26, 2008)[,] . . . "'even a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument.'" Id. at 340 (quoting Pinkney v. Progressive Home Health Servs., No. 06 Civ. 5023 (LTS) (JCF), 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008)) (internal quotation marks and additional citations omitted).  "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review,

17

where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v.

Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb.

18, 2011) (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 212

(S.D.N.Y. 2003)).

        This Court construes the following statements in Petitioner's notice of appeal as

objections to the R & R:

> It was my, uneducated in law proceedings, understanding that the decision I was
> appealing to [Judge Fox] was that of the Administrative Judge for Social Security
> of Record in this last judgment which claimed that I fell short in the amount of
> money I earned at hairdressing due to the fact that I claimed a deduction for
> supplies, and then already amended my income tax, thus legally dropping that
> deduction, that was at issue in his unfavorable to me decision regarding my
> receiving my full Social Security Benefits that I feel are due me by law.

> I also now continue to feel that all of the accusations leveled on me personally in
> this latest decision of Judge Fox's are extraneous and uncalled for as per my
> understanding of the appeal at hand.

> Not having all of the here unlisted opportunities and expense monies of the
> United States Government available to me in order to argue this case over the past
> nine years has presented an extreme hardship both financially, physically and
> mentally to me.

> The fact remains that I, in all good faith, as told to me to do by paid employees of
> the Social Security Administration; have done according to law.

> I worked and earned the money that I paid taxes on, I took sick as proven by
> timely medical records submitted that Judge Fox refused to take under
> consideration, see attached court letter dated May 12, 20[11] – and I feel my
> social security benefits should be changed over from the already SSI to the more
> rightfully deserved Social Security monthly payments due me.

(Dkt. No. 18)

        This Court further concludes that Petitioner's statements constitute conclusory

objections to the R & R.[10] Accordingly, this Court need not conduct a de novo review.

---

[10] To the extent that Petitioner objects to Judge Fox's refusal to consider the newly submitted
medical records, where a claimant submits medical records to a court that were not submitted to
the Commissioner, the court may remand the case to the Commissioner for consideration of the
new evidence if that evidence is material – meaning that it is new and not merely cumulative of

This Court has nonetheless thoroughly reviewed the administrative record. That record reveals that Petitioner had a full hearing before the ALJ and that the ALJ assisted Petitioner in supplementing the record, as the Second Circuit had directed. Although Petitioner's net earnings – as set forth in his 2002 amended federal tax return – qualify him for a 40th quarter of coverage, the SSA is not bound by a claimant's assertion about his income in a tax return. The claimant is required to verify such income. Here, this Court agrees with the ALJ and Judge Fox that there is no reliable evidence concerning Petitioner's earnings in 2002. Petitioner was not a credible witness and the documents he provided are concededly not reliable.

Petitioner has not credibly explained, inter alia,

1. why he filed two income tax returns for 2002, one listing income below the threshold and an amended return exceeding the income threshold;

---

the evidence already in the record – and that "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." See 42 U.S.C. § 405(g); see also Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004); Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988). "'The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'" Pollard, 377 F.3d at 193 (quoting Tirado, 842 F.2d at 597). "Further, such evidence must be probative and relevant to the alleged condition during the claimed period of impairment prior to the ALJ's decision." Johnson v. Astrue, 563 F. Supp. 2d 444, 461 (S.D.N.Y. 2008) (citing Pollard, 377 F.3d at 193). "Evidence generated after the ALJ issued his decision can be material if it suggests that during the relevant time period, the claimant's condition was more serious than previously thought." Id.

Here, Judge Fox determined that the newly submitted medical records are "not relevant or probative of the time period at issue, which is the period immediately following May 21, 2002. . . ." (R & R (Dkt. No. 16) at 13) Of the 323 pages of new medical records submitted by Petitioner, 260 pages are from the time period between 2008 and 2010. These records shed no light on Petitioner's medical condition in May 2002. Sixty-three pages relate to treatment Petitioner received in the spring of 2003, apparently for bleeding associated with his use of a blood thinner. See Dkt. No. 13-3 at 11-57, Dkt. No. 13-4 at 1-16. These records likewise shed no light on Petitioner's condition in May 2002.

In any event, the ALJ's decision is based largely on Petitioner's lack of credibility, which in turn is the product of inconsistencies in his testimony, inconsistencies between his testimony and earlier statements he made to the SSA, and inconsistencies between his testimony and the documentary evidence Petitioner proffered, which in itself is unreliable. The newly proffered medical evidence is not material to the decision rendered by the ALJ or the recommendation made by Judge Fox.

19

2.    how it is that he incurred no business expenses in connection with the hairdressing work he allegedly performed in May 2002, given his notes indicating that he incurred expenses and given that he had not performed any hairdressing work in more than 27 years;[11]

3.    the discrepancies between his customer list and his testimony concerning the number of hairdressing clients; and

4.    inconsistencies between his testimony in this case and statements he made to the SSA in a different context, including his earlier statement to the SSA that his May 2002 hairdressing work was a "1-time deal."

This Court likewise agrees with the ALJ and Judge Fox that Petitioner has not demonstrated that he was engaged in an established trade or business. Although Petitioner may have held himself out as a hairdresser in May 2002, he had not worked in 27 years. Moreover, he has previously stated that the May 2002 hairdressing work was intended to be a "1-time deal" that he was engaging in in order "to appease Social Security." (Id. 229) The ALJ and Judge Fox fully considered each relevant factor in concluding that Petitioner did not have a trade or business in 2002, and this Court finds no error in their analyses.

---

[11]  Indeed, Petitioner conceded at the September 19, 2005 and June 7, 2010 SSA hearings that he had purchased supplies for the hairdressing work that he performed in May 2002. See A.R. 94, 211, 216.

20

## CONCLUSION

This Court has reviewed Judge Fox's report and recommendation and is satisfied that "there is no clear error on the face of the record." Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) (citations omitted). Accordingly, this Court adopts the report and recommendation in its entirety, and the Commissioner's motion for judgment on the pleadings is granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of the Court is directed to terminate the motion, (Dkt. No. 11), and to close the case. The Clerk of the Court is further directed to mail a copy of this Order to pro se Petitioner Perley Thibodeau, 405 East 92nd Street, Apt. #20D, New York, New York 10128.

Dated: New York, New York          SO ORDERED.
          August 20, 2015

_____
Paul G. Gardephe
United States District Judge